# CHARLESTON.

Roush *et al.* v. Longdale Independent Telephone Co.

Submitted October 15, 1918.   Decided October 29, 1918.

Corporations—*Subscriptions—Cancellation of Original Stock—Assessment.*

   Where a number of persons agree to form a corporation and, before perfecting their organization, purchase the assets of a competing corporation, and at the same time and without any additional consideration acquire from the stockholders thereof all the outstanding stock, dividing it among themselves in proportion to their several contributions to the purchase price of such corporate assets, and then elect officers and begin business in the name of the corporation whose property they acquired, causing stock, representing their several interests, to be issued to themselves, and appoint soliciting agents, who induce other stock subscriptions by representing to the subscribers that all stockholders are to be on the same footing and all stock liable to be assessed until it reaches par, such agreement or understanding operates to cancel the original stock and place all stock thereafter issued on the same basis and liable to the same assessments.

Appeal from Circuit Court, Mason County.

   Bill for injunction by Marion Roush and others against the Longdale Independent Telephone Company. Decree for plaintiffs, and defendant appeals.

   *Reversed in part, and modified and affirmed in part.*

*Rankin Wiley,* for appellant.
*Sommerville & Sommerville, for appellee.*

Williams, Judge:

   Marion Roush and five others filed this bill to enjoin the prosecution of several actions, brought against them individually by the Longdale Telephone Company, a corporation, to collect an assessment levied upon the stockholders of said corporation. Plaintiffs' contention is that the stock owned by them is paid up stock and, therefore, not liable to be assessed. The cause was here once before this, on appeal from a decree sustaining a demurrer to plaintiffs' bill and dismissing their suit, and is reported in 78 W. Va. 136. The suit

was dismissed by the lower court for the alleged lack of jurisdiction in equity to entertain the suit. But this court reversed that decree and remanded the cause for further proceedings. The case is now before us on appeal taken by the Longdale Telephone Company from a final decree rendered after a full hearing on the pleadings and depositions of witnesses, taken and filed on behalf of both plaintiffs and defendant, granting relief to plaintiffs and perpetually enjoining defendant from attempting to enforce collection of any assessment made upon the stock owned by the plaintiffs.

The only question involved is one of fact, that is, whether or not the stock held by plaintiffs is paid up stock. That fact, in turn, depends upon the agreement or understanding had among the various stockholders at the time the stock was acquired by them. The par value of a share is ten dollars, and each one of the plaintiffs is the owner of ten shares which were acquired directly or indirectly by them in the following manner: C. B. Rickard and four others organized the Longdale Telephone Company under the laws of this state, with an authorized capital of $15,000.00. Four hundred shares of stock, of the par value of $10.00 each, had been issued of which said Rickard held 396 and the four other incorporators one share each. This company had erected lines and was doing business in Mason county. In the spring of 1907 a number of gentlemen, about thirty-six in number, including some of these plaintiffs, met and agreed to organize a competing company, to be known as the Graham Telephone Company. They elected officers and passed by-laws, but never obtained a charter for the new company. At this stage of their organization they conceived the idea of buying the property of the Longdale Telephone Company familiarly called "Charley Rickard's Company," and appointed a committee, consisting of two of their number, to confer with said Rickard and ascertain if the property could be bought and at what price. The committee, after conferring with Mr. Rickard, reported to the Graham Telephone people, who or most of whom were then assembled, that he was willing to sell and would take $1,900.00 for the property. The deal was immediately closed at that price, apparently without any corporate action being

taken in reference thereto by the Longdale Telephone Company. as then constituted. But of this no complaint is made. The new Longdale Telephone Company paid C. B. Rickard one-third of the purchase price in cash, most of which was furnished out of the treasury of the Graham Company, and executed its two notes in equal amounts for the balance, payable in one and two years, with interest from 28th of March, 1907. These notes were executed on behalf of the company by A. J. Brinker and P. L. Roush, its president and treasurer respectively, and payment of them was guaranteed by twenty-nine stockholders who signed the note as guarantors, among the number being Robert Roush, L. S. Roush and S. T. Windon, three of the plaintiffs to this suit. About the time the deal with C. B. Rickard was consummated, to-wit, on the 26th of March, 1907, he signed the following writing endorsed on the back of his certificate of shares of stock:

"For value received I hereby sell, assign and transfer unto S. T. Windon six shares and others 390 shares of the Capital Stock represented by the within Certificate, and do hereby irrevocably constitute and appoint S. T. Rickard to transfer the stock on the books of the within named Corportion with full power of substitution in the premises."

In pursuance of the power thus conferred S. T. Rickard assigned the 390 shares to the various parties who had agreed to form the Graham Company in blocks of ten shares each, plaintiffs acquiring their shares either directly or by transfer from some one or more of the assignees of Rickard, who is himself the holder of ten shares in the new company, four of which he purchased from his four associates in the original company, and six by assignment from the plaintiff S. T. Windon to whom had been assigned sixteen shares in the apportionment of the stock. New certificates of stock were issued to the various stockholders. S. T. Windon and L. M. Allen were appointed to solicit other stock subscriptions, and the newly organized company began and continued to do business in the name and under the charter of the old Longdale Telephone Company. Numerous other persons were induced to take stock on the representations of said Windon, who was also general manager of the company for the first

year following the new organization, that they would come in on an equal footing with those who had purchased the property from C. B. Rickard. They were required to make a cash payment of $2.00 on each share of stock, and were told that they would be liable to be assessed for additional payments to the par value of their stock, but that the company would likely be able to get along with much less capital than the par value of the stock. A number of witnesses who so testified were some of those to whom had been assigned the Rickard stock and who had guaranteed payment of the company's notes to him, notably H. T. Fry, Herman Clark and George N. Capehart.

A number of assessments were made at different times upon the stockholders, some of them to meet the purchase money notes and others to meet other obligations and expenses of the company. All of them were paid by all of the stockholders, except the last, of which this complaint is made, which is $2.21 per share. It was also paid by all the stockholders except plaintiffs.

The understanding among the parties who acquired the Rickard stock, as disclosed by the overwhelming weight of the testimony, the manner of its distribution amongst themselves, the representations made to subsequent stock subscribers by the company's general manager and authorized soliciting agent that they were let in on equal footing, and general acquiescence by all stockholders, for a time, in the right of the directors to make assessments on all the stock, after the purchase price to Rickard had been fully paid, forces upon the impartial mind the irresistible conclusion that the chief object in the minds of the parties was the acquisition of the tangible property of the old Longdale Independent Telephone Company, and the taking over of the stock held by Rickard was merely incidental, to avoid the trouble and expense of acquiring a new charter. It matters not whether the Rickard stock was fully paid up or not, for the parties understood, by its apportionment, that they were getting only such proportional interest in the property purchased as the amount of money each had agreed to pay bore to the purchase price. It was not an ordinary purchase of

stock in a continuing corporation, but was, in effect, a reorganization of the corporation by canceling the outstanding stock and issuing new stock in its stead. Rickard, who practically speaking was the corporation, sold its assets and then turned over all the outstanding stock to a number of gentlemen who reorganized it and issued new stock. The effect is the same, so far as the rights of the stockholders among themselves are concerned, as if the Rickard stock had been actually canceled and new stock issued to the Graham people. The amount paid on the new stock, including the present assessment, is less than seventy per centum of its par value.

In so far as the decree complained of enjoins the defendant from enforcing collection of the assessments made on the stock owned by plaintiffs it is reversed, and in so far as it holds the by-law amending Section 13 of the constitution of the defendant corporation null and void, it is modified to the extent of holding said by-law void only in so far as it attempts to authorize the directors to levy any assessment in excess of the par value of the stock, and as so modified that portion of the decree will be affirmed, with costs to the appellant, it having substantially prevailed.

*Reversed in part.   Modified and affirmed in part.*